# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>United States Department of Justice<br>Antitrust Division, Litigation III Section<br>450 Fifth Street, N.W., 4th Floor<br>Washington, DC 20530,<br><br>            *Plaintiff*,<br>     v.<br><br>ENTERCOM COMMUNICATIONS CORP.<br>401 E. City Avenue<br>Suite 809<br>Bala Cynwyd, Pennsylvania 19004,<br><br>and<br><br>LINCOLN FINANCIAL MEDIA COMPANY<br>3340 Peachtree Rd NE<br>Suite 1430<br>Atlanta, Georgia  30326,<br><br>            *Defendants*. | CASE NO.:<br><br>JUDGE: |

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil action to enjoin the proposed acquisition of Lincoln Financial Media Company ("Lincoln") by Entercom Communications Corp. ("Entercom"), and to obtain other equitable relief. The acquisition likely would substantially lessen competition for the sale of radio advertising to advertisers targeting English-language listeners in the Denver, Colorado Metro Survey Area ("Denver MSA"), in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. The United States alleges as follows:

## I.     NATURE OF THE ACTION

1.     By agreement, as amended and restated, dated December 7, 2014, between Lincoln National Life Insurance Company and Entercom, Entercom agreed to acquire Lincoln in a cash-and-stock deal for $105 million.  Lincoln National Life Insurance Company is a subsidiary of Lincoln National Corporation.

2.     Entercom and Lincoln own and operate broadcast radio stations in various locations throughout the United States, including a number of stations in Denver, Colorado. Entercom's and Lincoln's broadcast radio stations compete head-to-head for the business of local and national companies that seek to advertise on English-language broadcast radio stations in Denver, Colorado.

3.     As alleged in greater detail below, the proposed acquisition would eliminate this substantial head-to-head competition in the Denver MSA and result in advertisers paying higher prices for radio advertising time in that market.  Therefore, the proposed acquisition violates Section 7 of the Clayton Act, 15 U.S.C. § 18, and should be enjoined.

## II.    JURISDICTION, VENUE, AND COMMERCE

4.     The United States brings this action pursuant to Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain Entercom and Lincoln from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.  The Court has subject-matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

5.     Entercom and Lincoln are engaged in interstate commerce and in activities substantially affecting interstate commerce.  They own and operate broadcast radio stations in

various locations throughout the United States and sell radio advertising for those stations. Their radio advertising sales have had a substantial effect upon interstate commerce.

6. Entercom transacts business and is found in the District of Columbia and has also consented to venue in this District. Lincoln has consented to venue in this District. Venue is therefore proper in this District for both Entercom and Lincoln under Section 12 of the Clayton Act, 15 U.S.C. § 22. Entercom and Lincoln have also consented to personal jurisdiction in this District.

### III.    THE DEFENDANTS

7. Entercom, organized under the laws of Pennsylvania, with headquarters in Bala Cynwyd, Pennsylvania, is one of the largest radio broadcast companies in the United States. It has a nationwide portfolio of over 100 stations in 23 metropolitan areas. In 2014, Entercom reported net revenues of approximately $380 million.

8. Lincoln is an indirect, wholly owned subsidiary of Lincoln National Corporation. Lincoln is organized under the laws of North Carolina, with headquarters in Atlanta, Georgia. Lincoln owns and operates 15 broadcast radio stations in four metropolitan areas. In 2014, Lincoln had net revenues of approximately $69 million.

### IV.    RELEVANT MARKET

9. The relevant market for Section 7 of the Clayton Act is the sale of radio advertising time to advertisers targeting English-language listeners in the Denver MSA.

10. Entercom and Lincoln sell radio advertising time to local and national advertisers that target English-language listeners in the Denver MSA. An MSA is a geographical unit for which Nielsen Audio, a company that surveys radio listeners, furnishes radio stations, advertisers, and advertising agencies in a particular area with data to aid in evaluating radio

audiences. MSAs are widely accepted by radio stations, advertisers, and advertising agencies as the standard geographic area to use in evaluating radio audience size and demographic composition. A radio station's advertising rates typically are based on the station's ability, relative to competing radio stations, to attract listening audiences that have certain demographic characteristics that advertisers want to reach.

11. Entercom and Lincoln radio stations in the Denver MSA generate almost all of their revenues by selling advertising time to local and national advertisers who want to reach listeners in the Denver MSA. Advertising placed on radio stations in an MSA is aimed at reaching listening audiences in that MSA, and radio stations outside that MSA do not provide effective access to these audiences.

12. Many local and national advertisers purchase radio advertising time because they find such advertising valuable, either by itself or as a complement to advertising on other media platforms. Reasons for this include the fact that radio advertising may be more cost-efficient and effective than other media at reaching the advertiser's target audience (individuals most likely to purchase the advertiser's products or services). In addition, radio stations offer certain services or promotional opportunities to advertisers that advertisers cannot obtain as effectively using other media.

13. Many local and national advertisers also consider English-language radio to be particularly effective or necessary to reach their desired customers. These advertisers consider English-language radio, either alone or as a complement to other media, to be the most effective way to reach their target audience, and do not consider other media, including non-English-language radio, such as Spanish-language radio, for example, to be a reasonable substitute.

14. If there were a small but significant and non-transitory increase in the price ("SSNIP") of radio advertising time on English-language stations in the Denver MSA, advertisers would not reduce their purchases sufficiently to render the price increase unprofitable. Advertisers would not switch enough purchases of advertising time to radio stations outside the MSA, to other media, or to non-English-language stations to render the price increase unprofitable.

15. In addition, radio stations negotiate prices individually with advertisers; consequently, radio stations can charge different advertisers different prices. Radio stations generally can identify advertisers with strong preferences to advertise on radio in their MSAs. Because of this ability to price discriminate among customers, radio stations may charge higher prices to advertisers that view radio in their MSA as particularly effective for their needs, while maintaining lower prices for more price-sensitive advertisers. As a result, Entercom and Lincoln could profitably raise prices to those advertisers that view English-language radio targeting listeners in the Denver MSA as a necessary advertising medium.

### V.    LIKELY ANTICOMPETITIVE EFFECTS

16. Radio station ownership in the Denver MSA is highly concentrated. Entercom's and Lincoln's combined advertising revenue shares exceed 37 percent for English-language broadcast radio stations in the Denver MSA.

17. As articulated in the Horizontal Merger Guidelines issued by the Department of Justice and the Federal Trade Commission, the Herfindahl-Hirschman Index ("HHI") is a measure of market concentration.[1] Market concentration is often one useful indicator of the

---

[1] See U.S. Dep't of Justice, Horizontal Merger Guidelines § 5.3 (2010), available at http://www.justice.gov/atr/public/guidelines/hmg-2010.html. The HHI is calculated by squaring the market share of each firm competing in the market and then summing the resulting numbers. For example, for a market consisting of four firms with shares of 30, 30, 20, and 20 percent, the HHI is 2,600 ($30^2 + 30^2 + 20^2 + 20^2 = 2,600$). It approaches

likely competitive effects of a merger.  The more concentrated a market, and the more a transaction would increase concentration in a market, the more likely it is that a transaction would result in a meaningful reduction in competition harming consumers.  Mergers resulting in highly concentrated markets (with an HHI in excess of 2,500) that involve an increase in the HHI of more than 200 points are presumed to be likely to enhance market power under the merger guidelines.

18. Concentration in the Denver MSA would increase significantly as a result of the proposed acquisition.  The post-acquisition HHI in the Denver MSA would be over 3,500 for English-language broadcast radio stations.  That HHI is well above the 2,500 threshold at which the Department normally considers a market to be highly concentrated.  Entercom's proposed acquisition of Lincoln would result in a substantial increase in the HHI set forth above in excess of the 200 points presumed to be anticompetitive under the merger guidelines.

19. Advertisers that use radio to reach their target audiences select radio stations on which to advertise based upon a number of factors including, among others, the size and demographic composition of a station's audience, and the geographic reach of a station's broadcast signal.  Many advertisers seek to reach a large percentage of their target audiences by selecting those stations whose listening audience is highly correlated to their target audience.  If a number of stations broadcasting in the same MSA efficiently reach a target audience, advertisers benefit from the competition among those stations to offer better prices and services.

20. Entercom and Lincoln, each of which operates highly rated radio stations in the Denver MSA, are important competitors for English-language listeners in the Denver MSA. Moreover, Entercom and Lincoln each have multiple stations in the Denver MSA that seek to

---

zero when a market is occupied by a large number of firms of relatively equal size and reaches a maximum of 10,000 points when a market is controlled by a single firm. The HHI increases both as the number of firms in the market decreases and as the disparity in size between those firms increases.

appeal to and attract the same listening audiences. For many local and national advertisers buying radio advertising time in the Denver MSA, the Entercom and Lincoln stations are close substitutes for each other based upon their specific audience characteristics.

21. During individual price negotiations between advertisers and radio stations, advertisers often provide the stations with information about their advertising needs, including their target audience and the desired frequency and timing of ads. Radio stations have the ability to charge advertisers differing rates based in part on the number and attractiveness of competitive radio stations that can meet a particular advertiser's specific target needs. During negotiations, advertisers that desire to reach a certain target audience and certain reach and frequency goals in the Denver MSA can gain more competitive rates by "playing off" Entercom stations, individually and collectively, against Lincoln stations, individually and collectively. The proposed acquisition would end that competition.

22. Post-acquisition, if Entercom raised prices or lowered services to those advertisers that buy advertising time on the Entercom and Lincoln stations in the Denver MSA, non-Entercom stations in that MSA, risking a significant loss of their existing audiences, would be unlikely to change their formats to attempt to attract the Entercom stations' audiences. Even if one or more non-Entercom stations changed their format, they would be unlikely to attract in a timely manner enough listeners to make a price increase or service reduction unprofitable for Entercom.

23. The entry of new radio stations into the Denver MSA would not be timely, likely, or sufficient to deter the exercise of market power.

24. The effect of the proposed acquisition of Lincoln by Entercom would be to lessen competition substantially in interstate trade and commerce in violation of Section 7 of the Clayton Act.

## VII. VIOLATION ALLEGED

25. The United States hereby repeats and realleges the allegations of paragraphs 1 through 23 as if fully set forth herein.

26. Entercom's proposed acquisition of Lincoln would likely substantially lessen competition in interstate trade and commerce in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and would likely have the following effects, among others:

   a) competition in the sale of advertising time on English-language radio stations in the Denver MSA would be substantially lessened;

   b) actual and potential competition in the Denver MSA between Entercom and Lincoln in the sale of radio advertising time would be eliminated; and

   c) prices for advertising time on English-language radio stations in the Denver MSA would likely increase, and the quality of services would likely decline.

## VI. REQUEST FOR RELIEF

The United States requests:

   a) That the Court adjudge the proposed acquisition to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

   b) That the Court permanently enjoin and restrain the Defendants from carrying out the proposed acquisition or from entering into or carrying out any other agreement, understanding, or plan by which Lincoln would be acquired by, acquire, or merge with Entercom;

c) That the Court award the United States the costs of this action; and

d) That the Court award such other relief to the United States as the Court may deem just and proper.

Dated: July 14, 2015

Respectfully submitted,

FOR PLAINTIFF UNITED STATES:

_____
William J. Baer (DC Bar # 324723)
Assistant Attorney General for Antitrust

_____
Renata B. Hesse (DC Bar # 466107)
Deputy Assistant Attorney General for Antitrust

_____
Patricia A. Brink
Director of Civil Enforcement

_____
David C. Kully (DC Bar # 448763)
Chief
Litigation III Section

_____
Mark Merva (DC Bar # 451743)
Attorney
Litigation III Section
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W., 4th Floor
Washington, DC  20530
Telephone: (202) 616-1398
Facsimile: (202) 514-7308
E-mail: mark.merva@usdoj.gov